IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **VAN THI LE,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-120-KC** |
| | § | |
| **MARY DE ANDA-YBARRA et al.,** | § | |
| | § | |
| **Respondents.** | § | |

## ORDER

On this day, the Court considered Van Thi Le's Petition for a Writ of Habeas Corpus, ECF No. 1.

## I. BACKGROUND

### A. Arrival in the United States & Immigration Proceedings

Le is a citizen of Vietnam who entered the United States on November 22, 1999, as a refugee. *Id.* ¶¶ 52–54. In 2007, Le's refugee status was terminated. *Id.* ¶ 55. On January 9, 2012, an Immigration Judge ("IJ") granted Le voluntary departure, and after she failed to depart, the IJ entered a final order of removal. *Id.* ¶¶ 56–58. However, Le was not removed. *Id.* ¶ 59. Instead, Le was released under an Order of Supervision ("OSUP") that same year. *Id.* ¶ 60. Some fourteen years later, on January 19, 2026, immigration officials detained Le again. *Id.* ¶ 62. Le alleges that Respondents did not provide any notice of their intent to revoke her supervision and no basis to justify her re-detention. *Id.* ¶ 63. And that the Government has neither made any efforts to obtain travel documents to Vietnam, nor identified any third country for removal. *Id.* ¶¶ 64–67. Le alleges she did not commit any crimes or violate any conditions of her OSUP to warrant revocation. *Id.* ¶¶ 68–69.

Le is detained at the ERO El Paso Camp East Montana detention facility in El Paso, Texas. *Id.* ¶ 3. She argues that her detention is unlawful and asks the Court to order her release. *Id.* ¶¶ 4–6, 71–104.

### B.      Procedural History

On January 21, 2026, Le filed her Petition. *Id.* The Court ordered Respondents to show cause why the application for a writ of habeas corpus should not be granted. Jan. 22, 2026, Order 2, ECF No. 2. In answer to the Court's Show Cause Order, Respondents argued that Le's removal is "significant[ly] likely in the reasonably foreseeable future." Resp. 2, ECF No. 3. In terms of removal efforts, Respondents stated that "[w]hile Le's completed travel document request has not been sent yet" Enforcement and Removal Operations ("ERO") El Paso expected to submit a completed travel document request to the Detention and Deportation Officer ("DDO") on February 9, 2026, for internal approval. Resp. Ex. A ("Garite Decl.") ¶¶ 18–19, 21, ECF No. 3-1. From there the DDO "review process" would take about six to eight weeks. *Id.* And Respondents did not anticipate any impediments in securing travel documents and "repatriating Le to Vietnam in the reasonably foreseeable future." *Id.* ¶ 22.

The Court provided Respondents with just over a month to continue working towards Le's removal and file a status report detailing (1) whether Le's travel document request had been submitted to the appropriate DDO for approval, (2) whether Le's travel document request had been approved internally, (3) whether Le's travel document request had been submitted to Vietnam, and (4) the anticipated timeline for Le's removal from the United States. Feb. 6, 2026, Order, ECF No. 4.

Respondents then stated that on February 26, "Le[] refused to assist with the completed Form I-217 to obtain travel documents." Resp. Ex. A ("Molina Decl.") ¶ 6, ECF No. 5-1. Thus,

2

her travel document request had not been approved internally nor submitted to Vietnam.  *Id.* ¶¶ 7, 9.  Lastly, Enforcement and Removal Operations El Paso "coordin[ated] a phone call between Le and her attorney to continue with removal efforts" on March 6.  *Id.* ¶ 10.

The Court then gave Respondents an additional month to submit a travel document request to Vietnam and provide a timeline for Le's removal.  Mar. 9, 2026, Order, ECF No. 6.  In response, Respondents stated that a travel document request was completed and translated.  Status Update Ex. A ("Molina Decl.") ¶¶ 5–8, ECF No. 8-1.  On April 7, 2026, it was submitted for internal review, and upon approval, would be submitted to Vietnam.  *Id.* ¶¶ 8–10.  Because Respondents submitted the travel document request for internal review, the Court gave Respondents one more month to complete the process.  Apr. 14, 2026, Order, ECF No. 9.  The Court cautioned Respondents that it would not look favorably upon a failure to complete internal review and submit the travel document request to Vietnam by May 11.  *Id.*

Now, Respondents appear to have taken no action since April 7.  *See* Status Report, ECF No. 10.  Respondents state that Le's travel document request "was approved internally on April 7, 2026" but it was "submitted to Vietnam Removal International Operations (RIO) and Detention and Deportation Officer (DDO)."  *See id.* Ex. A ("Gonzalez Decl.") ¶¶ 5–6, ECF No. 10-1.  These statements are incongruent because RIO and DDO appear to be part of their internal operations.  *See id*; *see also* Garite Decl. ¶¶ 18–19, 21; Molina Decl. ¶ 8.  And in their previous status report, Respondents stated that "[a]s of April 9, 2026, ERO has not received a rejection of the travel document request from the DDO."  Molina Decl. ¶ 9.  Further, Respondents do not provide any new information since their last status report, where they stated Le's travel document request was submitted for internal review on April 7.  Molina Decl. ¶¶ 8–10.  Lastly,

3

Respondents do not provide an anticipated timeline for Le's removal as it "is currently unknown." Gonzalez Decl. ¶ 7.

## II.    ANALYSIS

Le seeks a writ of habeas corpus for her immediate release from custody, arguing that her continued detention violates the Immigration and Nationality Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 78–104.

This Court has previously held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim. *See Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (citing *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025)). By virtue of the liberty interest obtained through their release, a § 1231(a) re-detainee can also bring a distinct procedural due process claim. *See id*. In *Nguyen*, this Court found a procedural due process violation where a Vietnamese national subject to a final order of removal, who had previously been deemed unremovable to Vietnam and released, was re-detained without an individualized assessment of his flight risk and dangerousness by an Immigration Judge ("IJ"). *See id.* at *5–8. The balance of the *Mathews v. Eldridge* factors weighed in favor of Nguyen because he had a strong liberty interest, the risk of erroneous deprivation was high and easily ameliorated through a bond hearing, there was little evidence that he was a flight risk or danger to the community, and the Government failed to demonstrate that his removal was significantly likely in the reasonably foreseeable future. *See id.* Although the Government had submitted Nguyen's travel document request to Vietnam, it failed to provide an expected timeline for approval, did not attach copies of the submitted request, and the statistics it provided regarding successful removals of Vietnamese nationals did not identify whether any of these individuals,

4

like Nguyen, were pre-1995 refugees. *See id.* at *7. Thus, after approximately three and a half months in detention, this Court ordered Respondents to either provide Nguyen with a bond hearing or release him. *See id.* at *1, 4, 8.

Here, Le has been detained for about five months and Respondents have yet to submit a travel document request to Vietnam, despite having five months to do so. *See generally* Garite Decl.; Molina Decl.; Gonzalez Decl. And they still cannot provide an expected timeline for Le's removal. Indeed, Respondents do not confirm whether a travel document request has been submitted to the Vietnam government. *See generally* Gonzalez Decl. Whereas in Nguyen, Respondents at least offered statistics on removal and submitted a travel document request, here Respondents have done neither. Since Le's release in 2012, she could not be removed to Vietnam. In the last five months that Le has been detained, Respondents have failed to even internally approve Le's travel document request. Respondents have identified no other country, and have no expected removal date. Indeed, Respondents appear to have taken no action at all in Le's case for over one month, despite the Court's warning. In short, Le's removal was not possible in 2012, is not possible now, and "Respondents have not shown that [her] removal is significantly likely to occur in the reasonably foreseeable future." *See Nguyen*, 2025 WL 3120516, at *7 (citations omitted).

Thus, at this time, Respondents' interest in effectuating Le's removal order is weak. *See id.* at *7–8. And any interest in preventing flight or danger is similarly weak, as Le was previously released on an OSUP and there is no evidence in the record that she presents a flight risk or committed any crimes or endangered anyone since her release. *See id.* at *6. The Government's interest in re-detaining Le is thus outweighed by her strong liberty interest from at

least fourteen years of liberty in the United States, and the fact that the high risk of erroneous deprivation could be easily ameliorated by a bond hearing. *See id.* at \*5–6.

While there is no doubt that Le is subject to a final order of removal and that Respondents are entitled to remove her from the United States, when they have essentially failed to take any action to effectuate that removal, they cannot continue to detain Le without providing her with an individualized custody determination.

## III.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**.  The Court **ORDERS** that, **on or before May 19, 2026**, Respondents shall either: (1) provide Le with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Le's continued detention; or (2) release Le from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, **on or before May 19, 2026**, Respondents shall **FILE** notice informing the Court whether Le has been released from custody.  If Le has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph.  Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**IT IS FURTHER ORDERED** that if Le is released from custody, Respondents shall **RETURN** all of her personal property in their custody to her upon release.  Such property includes, but is not limited to, identification documents.

**There will be no extensions of the May 19, 2026, deadlines.**

**SO ORDERED**.

**SIGNED this 13th day of May, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE